The next case is Dali Wireless v. CommScope Technologies, Inc., number 201045. You're going to have to help me with your last name. It's easier to have luck. Spida. Spida. Mr. Spida, when you're ready. Good morning, Your Honors. May it please the Court. The Board misconstrued the claims of the 473 patent, which led to its erroneous finding that the Wu reference anticipates and renders obvious Representative Claim 11. Importantly, the Board did not find Claim 11 would be anticipated or obvious under Dali's interpretation of the terms at issue here. If this Court adopts Dali's reasoning and interprets the claims as Dali urges, then it should reverse the Board's findings of invalidity. I think it's important to start with what Claim 11 actually says so we can illustrate what the Board missed here. If the Court will indulge me, I'm going to read a rather lengthy limitation that's in Claim 11 that is the first relevant limitation here to understand the scope of this claim. And that limitation reads, wherein the host unit is configurable to transmit a digital representation of a first subset of the plurality of downlink signals to the first remote unit and a digital representation of a second subset of the plurality of downlink signals to the second remote unit, the second subset being different than the first subset. That's at Appendix 201. In other words, Claim 11 requires the host to be configurable to transmit at least two different downlink signals to at least two different remotes. That's right in the claim. Here, the Board actually agreed with Dali and found that this is a key functionality of the claim that rejected Comscope's argument that this is an intended use. The Board also found that Woo does not work this way, finding that in the case where multiple remotes are connected to one of Woo's host units, all such remote units receive the downlink signal and the singular. That's at Appendix 23. Now, this should have been enough for the Board to reject Comscope's argument that Woo invalidates Claim 11, but the Board didn't do that. Instead, it focused on the second relevant limitation in question, which I will also read in its entirety here, and that limitation is wherein the host unit is capable of sending a digital representation of any downlink signal it receives to any of the plurality of remote units. Isn't it that latter limitation that you just read now? Isn't that the one that your brief is all about? Yes and no, Your Honor. I hate to say yes and no, but our brief is focused on this limitation because this is where the Court erred, but the reality is these two – I'm sorry, the Board erred, but these two limitations have to be understood together because they appear in sequence in the brief. They're speaking about the same thing. It seems to me this goes to whether this idea of selective transmission is captured in the claims. Is that right? That's correct, Your Honor. And I had understood your briefing to us to be, yes, it's captured in the claims in the second of the two limitations that you just read to us. That's correct, Your Honor. Did you make an argument to us that it's captured in the claims in the first longer limitation that you read to us? No, Your Honor. That argument is not precisely in the brief, but I'm providing the context. Is it at all implied in the briefs? It is in the sense that what we're focused on is the meaning of the second limitation that I just read. How would I know that reading your brief? I mean, how would I know that the first one that you read is somehow at issue in this case? It's not – well, that's the thing. It's not at issue. The Board agreed with us, so it's just a background fact here that this is what the claim says, and so in interpreting the plain meaning of the claim, it's important to give meaning to the surrounding language. So we don't – are you saying in this appeal we don't have to decide if selective transmission is part of the limitation that you briefed to us? You don't have to decide that precise question, Your Honor. That's correct. But I think the court does need to pay attention to the surrounding claim language, including that limitation that I read in the first instance. So I think to separate them entirely would probably not be correct, but you're right, Your Honor, that it's not at issue in the sense that we think the Board made some sort of error there. There's no error for the court to correct in that first limitation. So do we even have to resolve a claim construction dispute here? Because it seems the Board said that Wu discloses this selective transmission either way. So I actually disagree with that, Your Honor, and if you'll indulge me, I can point you to the appendix on that issue. So my – Dolly's interpretation of the Board's finding on that issue is that at Appendix 23, the Board actually pretty directly stated that it was basing its reasoning on what was disclosed – I'm sorry, on the claim construction position. So it says at Appendix 23, this line of argument is based on Pat Owner's claim construction position that the capable ascending limitation requires signals to be sent only to one specific remote unit, which we have rejected. And then it goes on to say – acknowledge here that in Wu, where there are multiple remote units connected to one of Wu's host units, all such remote units receive the downlink signal. So really what it's saying there is the same signal is going to the remote units in Wu. The difference in Wu – and Wu is really directed to a very – the problem is directed to, but it solves it in a very different way. It is selectively transmitting, if we can use that phrase, to the hosts. So there are a number of hosts that receive a signal, but then they pass on that signal to all of the remotes, regardless of how many remotes are coupled to that one host. And so the Board actually acknowledged that there and really did focus on this claim construction dispute as being the basis for its finding. And this is where these two limitations interact with each other in a really significant way because what the claim says on its face is that there need to be two remotes, at least two remotes, and they need to receive different subsets of signals. Now, Wu doesn't do that. Wu has maybe numerous hosts, but that's a different component that's performing a different function. But isn't it because in Wu, according to the Board, the matrix switch did the selecting out and only sent different signals to different host units? Yes, Your Honor, the Board did say that, but it said it in a different context. So what the Board found was that the matrix switch and the host of Wu form a host. It didn't say that the matrix switch is then selecting out channels and sending those to different remotes. And in Wu's disclosure, there's a whole discussion about the importance of regions, and every one of the paragraphs that Comscope points to as being critical to the Board's determination confirmed this. The idea is that you could have numerous hosts connected to these base stations where the matrix switch is, and those hosts will just repeat the same channels to all the remotes that are connected to them. And that's actually at paragraph 51 of Wu. This is actually said expressly, and if I can get the citation here to you, that's at appendix 1191, paragraph 51 of Wu. If you compare that to appendix 196, column 4, lines 9 through 16, you'll see that there's a pretty stark distinction between what Wu's talking about and what the 473 patent is talking about. Is there any error in the Board treating Wu's matrix switch and host unit as being the equivalent, essentially, to the host unit of your patent? We did brief that issue, Your Honor. We do consider it to have been an error. Is it a legal error? No, Your Honor. I think I would characterize that as simply lacking substantial evidence in support. It seems to me that it's just a terminology issue. My understanding of what the Board did was to basically look at the claim and look at the functionality recited in the claim and then read it on the Wu reference. And even though host may have been used in a different way in the reference compared to the way it's used in the claim, the Board was looking at sort of the broader picture of what the functionality was to conclude that it reads on that reference. What's wrong with that? Well, Your Honor, I think that's true as far as it goes with respect to the host. The Board did make a finding and say the matrix switch and the host of Wu function together as a host. But to adopt the conclusion then that the selective transmission is happening in the same way as the 473 patent, that would require going a step further and saying that not only is the host and the matrix switch a host, but now we're going to go even further and we're going to say that these remotes that are all getting the same channel, well, technically, we would have to then ignore that they're not getting a first and a second channel that are different. I'm sorry. Yes, the first and the second remotes in that situation are all getting the same channels. And so we would have to then go to a second host. So it's essentially expanding the DAS and now include multiple hosts, multiple base stations in order to arrive at the claim. And that's not what's contemplated in the 473 patent. The whole idea in the 473 patent is to have an architecture that is as simple as possible and can still separate out those signals from the different remotes. To accomplish that with Wu, you would require a massive system with numerous hosts and base stations. Correct me if I'm wrong, but I understand you argue that in the invention, you have the capability of sending one signal to one remote. So you selectively just send that one signal to one particular remote. So, yes, Your Honor, we did say that. That was written with a view towards informing, not to argue that there is one remote connected to the host. It's to say that if there are two remotes, there have to be two remotes. The plain language requires that. One remote will get one of those signals, and another remote will get a different signal. And they have to be different because the plain language requires that. Where in the claim does it require that? That's the first limitation that I read this morning, that there need to be different subsets of signals going to different remotes. And there need to be at least two of them. Different subsets, but not necessarily just one signal going to one remote. Oh, I understand. Now I understand Your Honor's question. I'm sorry. We certainly never meant to argue that it was going to be just one signal. Just briefly, you make a distinction, I think, between Wu teaching routing carrier channels as opposed to downlink signals. Is that an important distinction, and did you make that distinction to the Board? We did make that distinction, and we addressed it briefly in our briefing. The distinction essentially is that a channel, as described in Wu, doesn't necessarily have the payload on it, whereas a downlink signal would have not only the carrier information, but it would actually have whatever signals are traveling with it. We obviously thought that distinction was important. I believe the Board did not agree. And so that's where it didn't get a lot of treatment. And where can we find it in the record to the Board, where you made that argument to the Board? That would be… It's fine with me. You can give us the citation when you come back. Okay. Yeah, I'm sorry, Your Honor. I don't have it. We're on to your rebuttal, so do you want to say your rebuttal? If you'll allow me to make a couple quick points on packetizing. I mean, sure time, because I'm using it however you want. Okay, great. I just wanted to flag on the packetizing issue, which we also briefed. Our position there is there's a lack of substantial evidence for the Board's findings, and I wanted to simply clarify one point here, which is that what the Board relied on is Section 6.3.2 and Section 6.3.3 of the SIPRI standard. That is an optional part of the standard. It says it's informative. It's not mandatory. And there's really a lack of explanation, both in Comscope's argument and Dr. Akinpore's declaration and the Board's reasoning for why a person of ordinary skill in the art would look to those portions of the specification under those circumstances. And that's especially true since even if you assume that SIPRI means packetizing, which is what the Board has done in its findings, if you packetize at the remotes, as Wu discloses on that theory, there would be no reason to packetize at the host, which is what Claims 9 and 14 require. So the premise that simply using SIPRI would inform a person of ordinary skill in the art to then make that modification to add SIPRI in the communication channel between then the host and the base station, it's incorrect because there would be no reason to do that. It's already packetized in the remote at that point. So it just shows another leap that the Board took here in its haste to arrive at this conclusion that it arrived at. And with that, Your Honor, if you have no further questions, I'll reserve my time. Thank you. Mr. Kaspers? Good morning, Your Honors. Phil Kaspers for Comscope, the appellee. One big-picture point I want to address up front, and that is, in addition to finding all but the packetizing claims anticipated, the Board also found all the claims to be obvious, obvious either in view of Wu or Wu and Sabbat. So on that issue, the patent owner never challenged motivation. It submitted no teaching-away evidence and very minimal, if you look at the appendix, it's just a handful of expert testimony, but it's to other issues. Their expert submits no expert testimony challenging motivation or no expert testimony on SIPRI. Instead, what we saw in their briefs and we heard today is attorney argument. We cataloged the evidence. Dr. Akinpore submitted detailed evidence on motivation, and the Board credited that, and that can't be overcome by attorney argument. So let me turn to the Board's finding that Wu system is, quote, capable of sending any downlink signal it receives to any of the remote units. There's substantial evidence of that. The Board, for example, pointed to Wu paragraph 47, where it states that the system can be configured to route channels 270 collectively, individually, or in any other desirable configurations. And then paragraph 49 adds to that, that the Wu system can route carrier channels in arbitrary groups. That same paragraph 47 that I mentioned also gives a simple example where Wu's matrix switch 250 can route two different carrier channels via units 230, via the multiple units 230, to two different remote units. So they specifically say a first carrier channel is routed to a first remote unit, and a second carrier channel is routed to a second remote unit. Now keep in mind that Claim 11 only requires two remotes, a first remote unit and a second remote unit, and two downlink signals. Example, a first carrier and a second carrier. That simple example in paragraph 47 discloses the any-to-any limitation. And as the Board noted, that's true even under patent owners' very narrow construction of any-to-any. They keep saying that. I'm not sure I understand it, but when I hear them say it, it sounds like they're talking about another limitation where the host is configured to send different subsets to different remotes. And the Board noted this, that instead of responding to paragraph 47 and the invalidity theory that the court adopted, patent owner isolates one of the digitizing units, or units 230. It's called host units 230, but they isolate one of them, and they argue that one alone is not sufficient. Well, that's responding to an invalidity theory that no one adopted. Turning to the issue whether there's substantial evidence that Wu's combination of the matrix switch 250 and the multiple units 230 discloses or renders obvious the host unit, I just want to make a few points on this. These components, as the Board found, they serve the same function as the host unit in the patent. On one end, they serve as an interface to the base station. On the other end, this combination of matrix switch and multiple units 230, on the other end it serves as an interface to the remote units. And as to that combination, the Board noted that the subcomponents are repeatedly described as functioning together, citing Wu paragraph 38, 36, and 39. That's in appendix 1189 to 1190. They're shown and described to be directly coupled, and they're shown and described to be co-located, as shown in figure 2 and 4, and shown to be within the same unit in figure 4. So as the Board pointed out, notably Dolly didn't submit any counterargument before the Board that Wu's matrix switch 250 in combination with Wu's multiple units 230, they didn't submit any evidence to challenge the function of that combination of the components. The Board said, quote, patent owner does not argue any difference, structural, functional, or otherwise. Well, they do now argue to us. I think it was in the gray brief at 9 in describing Wu. They say there's no selectivity in Wu, even if you add the matrix switch to the host units, because the routing policy of the matrix switch cannot transmit individual downlink signals to individual remote units. I take that to be the argument, at least in the reply brief to us. What do you make of that? Yeah, well, I see that as focusing on the one individual digitizing unit itself. The matrix switch, the way it operates, is it's connected to multiple digitizing units or host units, and it routes the appropriate carrier signals to the appropriate unit 230. Each unit 230 is connected to different groups of remotes, and it routes it for digitizing and then sending to the remote units that are connected. So I guess I would disagree with their argument, but it doesn't make a lot of sense to me in terms of the Board's invalidity theory. Getting to whether the combination of the matrix switch and the multiple units 230 disclose the host unit, the Board also found that it would have been obvious, in view of Wu alone, if their argument is, well, it's not in a single unit, the Board found that it would have been obvious to place the functionality of both Wu's matrix switch and the host units in a single unit. And here, we submitted detailed analysis from Dr. A. Campora, going through the motivation, and they didn't submit any expert testimony in response. And as pointed out by the Board, they don't challenge the specific basis. This is an obviousness issue at this point, and they have no evidence. Let me turn to the packetizing. Go ahead. You haven't mentioned claim construction. Do you view this as an appeal in which we have to resolve a claim construction dispute? Certainly not on whether the element that Wu discloses the capability of sending any to any, because the Board indicated that, look, Wu discloses that limitation even under their construction. There is a construction under packetizing, whether packetizing, in fact, requires destination or source information. We disagree with that. We went through a lot of evidence, intrinsic evidence, and other in the brief. But you're not the appellant, so we certainly don't have to resolve that. That's right. It would be harmless, sir, even if you disagree with it, because they found that the packetizing claims were obvious. On the packetizing claims, the Board's decision at 32 to 33 is very helpful, and it clears up a lot of the arguments in the reply brief. The Board said that the hearing narrowed and clarified what was disputed and not disputed. The Board noted that the patent owner admitted in its reply brief before the Board that SABIT, the second reference, uses SIFRI in the interface to the base station. That point was undisputed. What the patent owner did dispute is whether the SIFRI standard disclosed addressing destination information. And on that issue, the Board found that the SIFRI standard, in fact, at Section 6.3 disclosed the option of using addresses with the data, in other words, destination information, for transmitting data packets to more complex network topologies. For example, if you have multiple recs for multiple base stations to communicate with. And here, again, the Board, in finding the packetizing claims obvious, in view of WOO and SABIT, credited Dr. Akinpora's detailed analysis of motivation, the SIFRI standard. The Board also credited the SIFRI standard itself. But the Board also noted, and Dr. Akinpora pointed out, that the embodiments disclosed in WOO and SABIT, both describe embodiments where there's multiple base stations in the upstream to communicate with. That's the very complex technology that the SIFRI standard earmarks for using addressing. You no longer have a point-to-point situation where you're only going from here to here where you don't need addressing, but when you have multiple base stations to communicate, you need addressing so the data goes to the right location. So this is a classic case of obviousness. You're taking a suggested feature, addressing the data from SIFRI and SABIT, and using it for the same purpose for which it was taught to be used, complex network topologies. For example, systems that have multiple base stations in the upstream. Again, our brief detailed the motivation, the discussion of SIFRI, and we pointed to detailed discussion from our expert, Dr. Akinpora, on this issue. A patent owner, in response, doesn't challenge motivation, submits no evidence on the SIFRI standard. All the arguments that we're hearing are attorney arguments that are unsupported by evidence. That can't overcome the evidence we put forward and the Board relied on, on obviousness. I can address the claim construction on packetizing just briefly. I'm sorry, is that an issue that's before us? We did brief it. We did brief it as an alternative. If you disagree with the obviousness determination, if you don't want to hear it, I'm happy to. It's your time. I'll stop here, Your Honor. Thank you. Thanks. Mr. Spada, you have a little bit over on you. Thank you very much, Your Honors. First, I wanted to respond to Judge Stark's question about the difference between signals and channels. We did make the argument at page 38 of our brief. You're right. We did not cite to the record at that point in our brief. I must have been thinking of another IPR. I apologize. So are you acknowledging you did not even make the argument to the Board? We made the argument in our briefing, but it does not appear to be in the record to the Board. And I wanted to respond on paragraph 47 with the limited time I have left. Paragraph 47 of WU is discussing a form of distributing channels among hosts. And this is the fundamental problem with Comscope's argument, is that it wanted that host to be combined with the matrix switch to function as the host. But now it wants that host to be the remote. It wants the remote to be the recipient of these channels that have been separated. So Comscope is really trying to have it both ways. It's trying to say that the host is a host, and then the host is a remote. And it just depends on which argument it's making at the particular time. So paragraph 51, I think, should resolve this controversy of WU. That's at appendix 1191. It very clearly says that in the situation where there's a one-to-many configuration, one host, many remotes, it duplicates the serialized carrier channels. And so that is what WU is doing, and for that reason it does not disclose selective transmission from the host to the remotes. Thank you, Your Honors. Thanks, Mr. Counsel, for your arguments.